Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| CORAL BATIZ RIVERA | | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor (DACo.) |
|---|---|---|
| Recurrente | | |
| v. | KLRA202300466 | |
| | | Querella número: C-SAN-2022-0011580 |
| JUNTA DE DIRECTORES DEL CONDOMINIO BELLA MARE | | |
| Recurrida | | Sobre: Ley de Condominios |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 21 de diciembre de 2023.

Comparece ante nos la parte recurrente, Coral Batiz Rivera, mediante revisión judicial y solicita que revoquemos la determinación emitida y notificada por el Departamento de Asuntos del Consumidor (DACO) el 7 de julio de 2023. Mediante el referido dictamen, la agencia desestimó la querella radicada por la parte recurrente y ordenó el cierre y archivo de esta.

Por los fundamentos que expondremos a continuación, se confirma la determinación administrativa recurrida.

**I**

El 13 de julio de 2022, Coral Batiz Rivera (Batiz Rivera o recurrente) radicó una querella ante el DACO en contra de la Junta de Directores del Condominio Bella Mare (Junta de Directores o recurrida), su presidente Edwin Martínez y su administrador Ricardo Domínguez.[1] En síntesis, alegó que el estacionamiento que le asignaron en el Condominio Bella Mare no contaba con seguridad, toda vez que las cámaras de seguridad no captaban esa parte del estacionamiento, la verja colindante a la propiedad

---

[1] Apéndice 4 del *Alegato en Oposición a Solicitud de Revisión*, págs. 13-19.

Número Identificador

SEN2023 _____

tenía un agujero que cualquier persona externa podía entrar y su vehículo estaba siendo vandalizado. Indicó que, debido a la situación descrita, la falta de diligencia de la Junta de Directores y el que no le asignaran un estacionamiento seguro, optó por estacionarse en un espacio asignado a una persona que había fallecido, donde las cámaras de seguridad captaban su automóvil y este no sufría daños. Arguyó que, el administrador del Condominio Bella Mare catalogó el referido estacionamiento como Zona de Carga, aun cuando su vehículo estaba estacionado allí. Señaló que recibió varias multas por presunta violación al Reglamento del Condominio Bella Mare, las cuales nunca fueron notificadas, y que era la única titular que había recibido amonestaciones ascendentes a más de mil dólares ($1,000.00). Según adujo, estuvo meses solicitando el mapa de los estacionamientos del Condominio Bella Mare, pero no se lo brindaron.

Batiz Rivera planteó en su querella que el Tribunal de Primera Instancia le había concedido una orden de acecho en contra del Administrador del Condominio Bella Mare por alegadas amenazas dirigidas a su propiedad. Por otro lado, alegó que, el 15 de junio de 2022, recibió una misiva en la cual el licenciado Luis Elvin González Ramos (González Ramos) expresaba que la Junta de Directores podía asignar los estacionamientos como gustara, ya que el Reglamento de dicha propiedad horizontal le confería tal poder. Argumentó que la escritura matriz del Condominio Bella Mare catalogaba el estacionamiento como un elemento común general, el cual, según nuestro ordenamiento jurídico vigente, no era susceptible de ser propiedad individual de los titulares. Alegó que había solicitado las minutas y grabaciones de las asambleas celebradas para la designación de los espacios en el estacionamiento, pero, según adujo, estas no existían ni estaban registradas en el Registro de la Propiedad. Indicó que, en el mapa de estacionamientos que aparecía en la escritura matriz de la referida propiedad horizontal, surgían ciento treinta y cinco (135) espacios de estacionamiento. No obstante, sostuvo que, al presente, existían ciento noventa y siete (197) espacios de estacionamiento, por lo

que todos los titulares del Condominio Bella Mare estaban en violación de la ley, Reglamento y escritura matriz. En virtud de lo anterior, solicitó que: (1) las multas fueran removidas por ser nulas; (2) la asignación de los espacios de estacionamiento conforme a la ley y la escritura matriz; y (3) se devolviera la propiedad a su estado original, según el plano de estacionamiento de la escritura matriz inscrito en el Registro de la Propiedad.

Posteriormente, el 9 de agosto de 2022, notificada el 13 de enero de 2023, Batiz Rivera enmendó su querella a los efectos de incluir como parte coquerellada al Consejo de Titulares del Condominio Bella Mare (Consejo de Titulares). A su vez, solicitó el cese y desista de la representación legal del licenciado González Ramos y el Bufete Marimar Pérez-Riera, ya que no poseían un contrato de servicios legales aprobado por el Consejo de Titulares. Además, solicitó la imposición de costas y honorarios de abogado al presidente del Condominio Bella Mare y a la Junta de Directores, al igual que se consideraran como *ultra vires* las actuaciones del Consejo de Titulares.

En respuesta, el 24 de febrero de 2023, el Consejo de Titulares acreditó su contestación a la querella,[2] posteriormente enmendada.[3] En esencia, negó las alegaciones en su contra. Indicó que el espacio de estacionamiento asignado al Apartamento 5-J de Batiz Rivera se había asignado desde que el Condominio Bella Mare se constituyó en régimen de propiedad horizontal. Alegó que el Condominio Bella Mare tenía múltiples medidas de seguridad en su estacionamiento que protegían adecuadamente la propiedad de los titulares. Aceptó que, desde el 3 de mayo de 2022, Batiz Rivera se estacionaba en un espacio que no le pertenecía, razón por la cual había sido multada en múltiples ocasiones, luego de ser advertida en cuanto a que su conducta violentaba las normas recogidas en el Reglamento del Condominio Bella Mare, específicamente

---

[2] Véase, *Contestación a Querella* en el expediente administrativo.
[3] Apéndice 12 del recurso, págs. 83-85.

en el Artículo 39. Arguyó que Batiz Rivera amenazó con destruir la propiedad del Condominio Bella Mare para restringir el acceso al estacionamiento de carga con el fin de estacionar su vehículo. Sostuvo que Batiz Rivera cambió de estacionamiento porque quería estar más cerca de la entrada del Condominio Bella Mare por pura conveniencia. Señaló que todas las multas fueron notificadas a la recurrente y que, además, habían puesto a su disposición todos los documentos disponibles en la oficina de la administración relacionados a las peticiones de esta para su revisión y reproducción.

Por otro lado, en su *Contestación a Querella*, el Consejo de Titulares negó que el administrador del Condominio Bella Mare hubiera amenazado a la recurrente e indicó que la orden de acecho ex parte a favor de esta se dejó sin efecto luego que el administrador prestara su testimonio ante el foro primario. Sostuvo que Batiz Rivera había sido temeraria al presentar la acción de epígrafe con conocimiento de que no le asistía la razón en derecho porque el estacionamiento en controversia era un elemento común, cuya administración le correspondía a la Junta de Directores. Según aduo, nunca habían adjudicado ninguno de los espacios de estacionamiento del Condominio Bella Mare, pues estos eran elementos comunes que no estaban catalogados como "propiedad" de los apartamentos individuales. Sobre ese particular, sostuvo que la titularidad de los estacionamientos de la referida propiedad horizontal les pertenecía por ser un elemento común y administrados por la Junta de Directores. De otro lado, planteó que, en agosto del 2022, el actual presidente de la Junta de Directores, Jaime Alicea, le cambió el espacio de estacionamiento a la recurrente por uno más cercano a la puerta de entrada. Argumentó que la escritura matriz del Condominio Bella Mare no incluía un estacionamiento específico en la descripción registral de los apartamentos y que la recurrente conocía que no estaba adquiriendo un espacio de estacionamiento específico por título legal cuando compró su apartamento.

Así las cosas, el 3 de marzo de 2023, Batiz Rivera instó una *Moción Solicitando Cese y Desista*.[4] En resumen, alegó que, el 13 de enero de 2023, la Junta de Directores emitió un comunicado autorizando a los empleados del Condominio Bella Mare a utilizar cualquier estacionamiento de visita disponible durante su turno de trabajo. Según sostuvo, dicha actuación era contraria a la ley, Reglamento y escritura matriz, además de que coartaba los derechos de los titulares de la referida propiedad horizontal. Planteó que los titulares tenían derecho a ocho (8) espacios de estacionamiento para la visita establecido en la escritura matriz, los cuales no eran para el uso y disfrute de las personas empleadas del Condominio Bella Mare. Arguyó que la escritura matriz de la referida propiedad horizontal no proveía estacionamiento para las personas empleadas, por lo que estas podían estacionar sus vehículos en las áreas adyacentes en las afueras del Condominio Bella Mare. Manifestó que la Junta de Directores no tenía la autoridad ni el poder en ley para cambiar o alterar el destino y naturaleza de los estacionamientos de visita, por estos ser elementos comunes generales. En vista de ello, en lo aquí atinente, solicitó el cese y desista de utilizar los estacionamientos de visita para estacionar los vehículos personales.

Luego de varios trámites procesales, culminado el descubrimiento de prueba y celebrada una vista administrativa a esos efectos, el 7 de julio de 2023, el DACO emitió y notificó la *Resolución* que nos ocupa, mediante la cual desestimó la acción de epígrafe y ordenó el cierre y archivo de esta.[5] En el referido dictamen, consignó las siguientes determinaciones de hechos:

1. La parte querellante Coral Batiz Rivera es titular del apartamento 5-J del Condominio Bella Mare localizado en Carolina, Puerto Rico.

2. La parte querellante adquirió dicho apartamento de parte de Edil Danois Román, mediante la escritura número 206, otorgada el 26 de octubre de 2020 ante la notaria Vianice Cruz De Choudens.

---

[4] Véase, *Moción Solicitando Cese y Desista* en el expediente administrativo.
[5] Apéndice 1 del recurso, págs. 1-19.

3. Conforme la escritura de compraventa antes mencionada, el apartamento de la parte querellante no tiene asignado un espacio de estacionamiento. No obstante, al momento de comprar se le informó por el vendedor que dicho apartamento tenía asignado el espacio de estacionamiento número 19, ubicado en una esquina hacia el parque. La parte querellante tenía conocimiento de esto antes de la compraventa, toda vez que vivió en el apartamento en calidad de arrendataria más de un año previo a realizarse la compraventa.

4. El [C]ondominio Bella Mare fue sometido al régimen de [p]ropiedad [h]orizontal mediante la escritura número 219 otorgada el 30 de julio de 1973, ante notario Héctor Sainos. Conforme dicha escritura, se establece que hay 123 apartamentos residenciales y existen 135 espacios de estacionamiento que son elementos comunes del inmueble. La asignación de espacios de estacionamiento para beneficio de cada apartamento se asignaba por parte del desarrollador al momento de la compraventa, según un plano numerado que fue anejado a la escritura matriz.

5. Debido al crecimiento de la comunidad y la necesidad de espacios de estacionamiento adicionales, aproximadamente entre los años 1987 y 1988, y posterior a una asamblea del Consejo de Titulares en el [C]ondominio Bella Mare, se añadieron 62 espacios de estacionamiento en el Condominio, hasta llevarlo a 197 espacios. El [C]ondominio no conserva las minutas o actas de la asamblea donde se aprobaron estas obras. No obstante, el resultado de esta gestión fue confirmado mediante el testimonio de titulares que participaron en este proceso de añadir espacios en dicho momento.

6. Actualmente[,] en el [C]ondominio Bella Mare todos los apartamentos tienen un estacionamiento asignado y existe estacionamiento para visitantes. Existe un plano donde aparecen los 197 espacios de estacionamiento debidamente numerados y dicho plano tiene correspondencia fiel y exacta con la realidad física del estacionamiento.

7. A principios del mes de mayo de 2022, el auto de la parte querellante fue vandalizado por haber sido impactado por piedras. Debido a lo anterior, la parte querellante comenzó a estacionarse sin autorización en un espacio de estacionamiento que estaba asignado al apartamento de una titular que había fallecido y que [e]sta entendía le brindaba mayor seguridad. Dicho espacio fue posteriormente designado como uno de carga.

8. A la parte querellante se le llamó la atención por estacionarse en un espacio que no tenía asignado, sin autorización. A pesar de ello, la parte querellante continuó usando dicho espacio.

9. Debido a la situación de vandalismo que alegó, la parte querellante solicitó mediante un correo electrónico con fecha de 9 de mayo de 2022 que se le asignara un espacio de estacionamiento con vigilancia directa de las cámaras de seguridad. Esta solicitud fue contestada por la administración del [C]ondominio indicándole que los únicos

espacios disponibles eran en la parte del frente, donde se encuentra la caseta de seguridad. Igualmente, se le indicó que[,] desde el 3 de mayo[,] se encontraba utilizando un estacionamiento que no le correspondía, sin autorización, a pesar de tener dos estacionamientos disponibles, uno asignado y otro alquilado.

10. Los días 3, 4, 9, 10, 11, 12, 13, 14, 16, 18, 19, 23, 24 y 25 de mayo de 2022, se registraron incidentes donde la parte querellante estacionó su vehículo en un espacio de estacionamiento que no le correspondía. Estos incidentes fueron registrados en el informe de incidente que llevan los guardias de seguridad del [C]ondominio. En varios de estos informes se indica que a la querellante se le solicitó que moviera su vehículo y esta se negó a hacerlo. A base de estos informes de incidentes, se le impusieron a la parte querellante un total de 15 multas de $75.00 cada una, las cuales le fueron facturadas en su estado de cuenta. Dicho estado fue recibido por la parte querellante el 9 de junio de 2022, según alega en la querella. Por otro lado, según admitió la parte querellante, a partir del 9 de junio de 2022, se le expidieron un total de 7 boletos adicionales por violaciones relacionadas a estacionamiento de su vehículo.

11. Antes de comprar su apartamento, la parte querellante no había revisado la escritura matriz y el plano de estacionamiento que está inscrito en el [R]egistro de la [P]ropiedad. Esta gestión la hizo el 16 de junio de 2022[,] según alegó en la querella.

12. En vista de lo anterior, la parte querellante radicó la querella de epígrafe el 13 de julio de 2022, solicitando que las multas sean removidas ya que son nulas, la asignación de estacionamientos[,] conforme a la ley y la escritura matriz; y que se devuelva la propiedad al estado original según [el] plano de estacionamiento de la escritura matriz registrado en el Registro de la Propiedad.

13. El Reglamento del [C]ondominio Bella Mare establece como una de sus prohibiciones el estacionarse en un estacionamiento ajeno que no haya sido asignado, incluyendo estacionamientos de apartamentos vacíos o en proceso de ejecución. La multa por esta violación según el [R]eglamento es de $75.00.

14. Desde el mes de agosto de 2022, la Junta de Directores del Condominio Bella Mare le asignó otro estacionamiento a la parte querellante. La parte querellante manifestó estar conforme con el mismo por estar debajo de una de las cámaras de seguridad.[6]

Aquilatada la prueba desfilada durante la vista administrativa, la agencia recurrida determinó que la recurrente había aceptado su espacio de estacionamiento conforme le fue manifestado por su vendedor y no tuvo ningún reparo con esto. Señaló que dicho espacio fue asignado desde

---

[6] Apéndice 1 del recurso, págs. 1-3.

mucho antes que la recurrente adquiriera su apartamento y no fue hasta que esta fue multada por estacionarse en un lugar que no le correspondía que tomó la iniciativa de cuestionar la ubicación de su espacio de estacionamiento. El DACO fundamentó lo anterior con el Artículo 39 de la Ley de Condominios de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, según enmendada, 31 LPRA sec. 1922k (Ley de Condominios), el cual establecía claramente que el adquirente de un apartamento aceptaba la condición manifiesta de los elementos comunes del condominio en la forma en que estos se encontraran físicamente al momento de adquirirlo. Sobre ese particular, expresó que Batiz Rivera no podía pretender trastocar la asignación de su estacionamiento y los otros espacios de estacionamiento de los demás titulares, los cuales estaban denominados como un elemento común y no tenían una asignación específica en la escritura matriz. En virtud de ello, concluyó que la reclamación de epígrafe, respecto a la distribución de los estacionamientos, iba en contra de lo establecido en el citado articulado, por lo que debía desestimarse su petición.

Por otro lado, indicó que la conducta de la recurrente de estacionar su vehículo en otro espacio de estacionamiento se realizó con conocimiento claro de que dicha acción estaba prohibida, sin haber canalizado su petición de conformidad con el Reglamento del Condominio Bella Mare, y a pesar de habérsele llamado la atención en múltiples ocasiones. En cuanto a las multas, el organismo administrativo concluyó que, conforme a la prueba presentada, no había duda de que la parte recurrente, desafiando las directrices de los guardias de seguridad, cometió las infracciones de estacionamiento imputadas en violación al Reglamento del Condominio Bella Mare. Asimismo, determinó que dicha reclamación estaba prescrita, toda vez que contaba con un término de treinta (30) días para presentar su acción de impugnación, conforme establecía el Artículo 65 de la Ley de Condominios, 31 LPRA sec. 1923j, contados a partir del

9 de junio de 2022 cuando le notificaron su estado de cuenta, el cual había vencido el 13 de julio de 2022.

Por otro lado, el DACO indicó que la Junta de Directores sí tenía la obligación de atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen, especialmente lo relativo a los elementos de uso común, conforme establecía el Artículo 53 de la Ley de Condominios, 31 LPRA sec. 1922y. Sobre ello, concluyó que Batiz Rivera no demostró que se hubiera incumplido con dicho deber. Resolvió que la recurrente tampoco demostró que la Junta de Directores hubiera realizado actuación ilegal alguna relacionada con la Ley de Condominios, *supra*, o su Reglamento. Basado en lo anterior, coligió que la acción de epígrafe impugnando las multas impuestas debía ser desestimada.

En desacuerdo, el 28 de julio de 2023, la parte recurrente presentó una *Solicitud de Reconsideración de la Resolución del 7 de julio de 2023*,[7] la cual no fue considerada por el DACO dentro del término estatuido para ello.

Inconforme con la determinación de la agencia, el 1 de septiembre de 2023, la parte recurrente compareció ante nos y realizó los siguientes señalamientos:

> Erró el DACO al ordenar la desestimación de la querella de epígrafe y el cierre y archivo de la misma[,] toda vez que su determinación no fue basada en la prueba documental y testifical que surge del expediente.
>
> Erró el DACO al no atender y dilucidar la enmienda radicada el 9 de agosto de 2022, dictada el 29 de diciembre de 2022 y notificada oportunamente el [1]3 de enero de 2023.
>
> Erró el DACO al no atender y dilucidar la solicitud de cese y desista radicada el 28 de febrero de 2023.

En cumplimiento con nuestra *Resolución* del 6 de septiembre de 2023, y luego de concederle una prórroga, la parte recurrida compareció

---

[7] Apéndice 2 del recurso, págs. 20-31. Cabe destacar que dicho documento no se encuentra en la copia certificada del expediente administrativo ante nos.

mediante *Alegato en Oposición a Solicitud de Revisión* el 13 de octubre de 2023.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, nos disponemos a resolver el recurso que nos ocupa.

**II**

**A**

Los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no

se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd*. Véase, además, *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), "estableció el marco de revisión judicial de las determinaciones de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v.*

*Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

El Departamento de Asuntos del Consumidor (DACO) constituye el organismo administrativo cuyo principal propósito es defender, vindicar e implantar los derechos de las personas consumidoras en nuestra jurisdicción, mediante la aplicación de las leyes que asistan sus reclamos. Art. 3 de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341b; *Polanco v. Cacique Motors,* 165 DPR 156 (2005). A tenor con ello, la agencia está plenamente facultada para resolver las quejas y querellas promovidas por las personas ciudadanas en ocasión a que se transgredan las disposiciones legales que proveen para la protección de sus prerrogativas; ello, en cuanto a servicios adquiridos o recibidos del sector

privado de la economía. A su vez, el DACO está facultado para conceder los remedios pertinentes mediante la debida adjudicación administrativa. 3 LPRA secs. 341h, 341i-1.

En virtud de lo anterior, mediante la aprobación del Reglamento de Procedimientos Adjudicativos del DACO, Reglamento Núm. 8034 de 14 de junio de 2011 (Reglamento Núm. 8034), el organismo adoptó un esquema uniforme de reglas para la dilucidación de las controversias sometidas a su consideración. De este modo, la agencia ve regido el ejercicio de sus poderes respecto al proceso adjudicativo de que trate, por la aplicación de normas afines a la solución justa, rápida y económica de las querellas. Regla 1 del Reglamento Núm. 8034, *supra*. Las reglas contenidas en el referido precepto aplicarán a las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores o por el DACO. Regla 3 del Reglamento Núm. 8034, *supra*. Toda resolución emitida por esta agencia otorgará el remedio que en derecho proceda, aun cuando la parte querellante no lo haya solicitado. Regla 27.1 del Reglamento Núm. 8034, *supra*. Ahora bien, en la ejecución de sus facultades adjudicativas, la Regla 24 del Reglamento Núm. 8034, *supra*, expresamente adopta el principio administrativo sobre la aplicación subsidiaria de las reglas procesales y probatorias propias de los trámites judiciales, al disponer como sigue:

> Las Reglas de Procedimiento Civil y de Evidencia no serán de estricta aplicación a las vistas administrativas, sino en la medida en que el Funcionario o Panel de Jueces que presida la vista o el Departamento estime necesario para llevar a cabo a los fines de la justicia.

Por otra parte, el Reglamento Núm. 8034, *supra*, esboza las condiciones en las que se llevará a cabo la celebración de una vista administrativa. Atinente a lo que nos ocupa, específicamente estatuye el derecho de las partes de presentar todo tipo de evidencia documental, testifical técnica o pericial en apoyo a sus respectivas teorías. Regla 20.5 del Reglamento Núm. 8034, *supra.*

**C**

La facultad del DACO para adjudicar querellas relacionadas con acciones de impugnación presentadas por titulares de un condominio en el que haya al menos una unidad destinada a vivienda, emana de la Ley de Condominios de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, según enmendada, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios). En virtud del Artículo 65 del referido estatuto, 31 LPRA sec. 1923j, los titulares pueden impugnar ante el DACO acuerdos, omisiones, o actuaciones de la Junta de Directores, del administrador interino, del presidente y del secretario, concernientes a la administración del inmueble, cuando estos le sean perjudiciales al titular o a la comunidad, o que sean contrarios a la ley, escritura de constitución o reglamento del condominio. Según dispone el citado articulado, para todo tipo de impugnación se tendrán treinta (30) días, contados a partir de la fecha en que se tomó el acuerdo o determinación a impugnarse, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.

En lo pertinente, el Artículo 53 de la Ley de Condominios, 31 LPRA sec. 1922y, establece los deberes y facultades de la Junta de Directores. Entre ellos, dicho cuerpo de directores tendrá la facultad de atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen de propiedad horizontal, especialmente en cuanto a las cosas y elementos de uso común, así como los servicios generales. En virtud de ello, la Junta de Directores debe hacer, a tales efectos, las oportunas advertencias y apercibimientos a los titulares. Asimismo, dicha junta tiene el deber de cumplir y hacer cumplir las disposiciones del citado estatuto, de su reglamento, de la escritura matriz y de los acuerdos del Consejo de Titulares.

Con respecto a los elementos comunes del inmueble, el Artículo 17 de la Ley de Condominios, 31 LPRA sec. 1921p, dispone lo siguiente:

[…]

(b) Se consideran elementos comunes generales, salvo disposición o estipulación en contrario los siguientes:

(1) El terreno, los sótanos, azoteas, patios y jardines.

(2) Los locales destinados a alojamiento de porteros, oficiales de vigilancia, personal que presta servicios de limpieza y mantenimiento u otros, así como los locales destinados para almacenamiento conocidos como covachas.

**(3) Las áreas destinadas a estacionamiento.**

(4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes.

**La adjudicación de las áreas o elementos comunes antes enumerados, requerirá que así se haya dispuesto en la escritura de constitución del régimen. De realizarse la conversión y transferencia al régimen de propiedad horizontal, luego de constituida la escritura matriz, se requerirá el consentimiento de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes. La transferencia deberá inscribirse en el Registro de la Propiedad, dejando constancia de los nuevos porcentajes de participación para cada uno de los apartamentos beneficiados.**

Aun cuando las áreas enumeradas anteriormente en el inciso (b) de esta sección sean susceptibles de aprovechamiento independiente, las mismas se podrán constituir y/o enajenar como áreas o instalaciones para el beneficio del Consejo de Titulares o de uno (1) o varios de los titulares de apartamentos en el condominio; además, estas áreas e instalaciones podrán constituirse y/o usarse para el beneficio de uno (1) o varios titulares en condominios distintos u otros desarrollos, cuando las áreas o instalaciones se usen en forma compartida entre sí o con una (1) o más urbanizaciones[,] comunidades y/u otros proyectos, según sea aprobado por las entidades públicas o cuasipúblicas con jurisdicción, o mediante contrato entre las partes. El área de estacionamiento en los condominios exclusivamente residenciales se configurará bien como elemento común, general o limitada, o bien como área privada cuyos espacios y titularidad se adscribirá a los dueños de los apartamentos.

Excepto en los condominios no residenciales, entiéndase, exclusivamente comerciales o profesionales, la titularidad sobre los espacios individuales de estacionamiento que constituyan fincas independientes no se tomará en cuenta para la determinación de mayoría a base del número de titulares, si bien se podrá computar el por ciento de participación que corresponda a dichos espacios en los elementos comunes, cuando el reglamento incluya dicha participación en su definición de mayoría. Cuando el área destinada a estacionamiento se haya configurado en su totalidad como finca independiente, a su titular le corresponderá un voto, como si se tratara de un apartamento.

La medida superficial de aquellas áreas que sean asignadas en la escritura matriz constitutivos de un condominio como anejo de un apartamento para su uso particular y con exclusión de los demás apartamentos, incluyendo los estacionamientos que han sido asignados a un apartamento particular, no será incluida para computar el área superficial del apartamento en cuestión ni su por ciento de participación en los elementos comunes del inmueble, a menos que el titular único de todos los apartamentos, o de haber más de un titular, que al menos dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes dispongan expresamente lo contrario para uno (1) o más anejos, en la escritura matriz original para la constitución del régimen, y/o en aquellos documentos que se preparen y otorguen para modificar un régimen ya existente, en cuyo caso, s[o]lo se tomarán en consideración para dichos propósitos aquellos anejos que así se especifiquen en la escritura matriz original o los documentos para enmendar un Régimen de Propiedad Horizontal existente. (Énfasis nuestro).

Por otro lado, la Ley de Condominios, *supra*, desglosa las normas a las que está sometido cada titular de un apartamento respecto al uso y disfrute de este. Sobre tal particular, el Artículo 39 del referido estatuto dispone expresamente que la persona adquirente de un apartamento acepta la condición manifiesta de los elementos comunes del condominio en la forma en que estos se encuentren físicamente al momento de adquirir. 31 LPRA sec. 1922k. A dicha persona adquirente se le atribuirá el conocimiento de los cambios manifiestos que existan en el inmueble para todos los efectos de la tercería registral. *Íd.*

**D**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los foros inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el foro de origen desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro juzgador. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no

dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función del foro juzgador. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el foro recurrido. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el foro de origen, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro recurrido. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 2023 TSPR 35, 211 DPR __ (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro inferior. *Íd.*

En lo atinente al caso de autos, en recursos de revisión judicial, la transcripción de la vista administrativa o una exposición narrativa de la prueba son imprescindibles cuando se cuestiona la apreciación de la

prueba y la adjudicación de credibilidad del foro administrativo. Los tribunales revisores no deben intervenir con la apreciación de la prueba oral de las agencias, si no tienen forma de evaluar la evidencia presentada, debido a que no se elevó una transcripción o una exposición narrativa de la prueba. El Tribunal Supremo de Puerto Rico ha reconocido que, en ausencia de la prueba oral, difícilmente se podrá descartar la determinación impugnada. Por lo tanto, la parte interesada tiene que presentar la prueba oral bajo la que se pretende impugnar las determinaciones de una agencia administrativa. En particular, la Regla 66 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 66, establece el trámite a seguir para que se autorice la reproducción de la prueba oral desfilada en el procedimiento administrativo. De otro lado, la Regla 29.5 del Reglamento Núm. 8034, *supra*, dispone que cualquier parte podrá solicitar copia certificada del expediente y de la transcripción de la vista, mediante el pago de los cargos correspondientes. *Graciani Rodríguez v. Garage Isla Verde,* supra, págs. 128-130.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En la presente causa, la parte recurrente argumenta que el DACO erró al desestimar la querella promovida por esta, toda vez que, según alega, dicha determinación no estuvo basada en la prueba documental y testifical que surge del expediente. De igual modo, aduce que el organismo incidió al no atender y dilucidar su solicitud de enmienda a la querella. Sostiene, además, que la agencia erró al no adjudicar su solicitud de cese y desista. Habiendo examinado los referidos señalamientos a la luz del derecho aplicable y la prueba, confirmamos la *Resolución* administrativa recurrida. Nos explicamos.

En esencia, la recurrente cuestiona la credibilidad de la prueba que llevó al DACO a concluir que la parte recurrida no realizó actuación ilegal alguna relacionada con la Ley de Condominios, *supra*, y su Reglamento.

No obstante, no presentó ante esta Curia una transcripción de la prueba oral, ni una exposición narrativa a esos efectos. Sin la prueba oral no podemos descartar las determinaciones de la agencia impugnadas. Por otro lado, la parte recurrente no ha probado que en el expediente de la agencia existe evidencia sustancial que derrote el valor probatorio de la prueba creída por el foro administrativo, cuya copia certificada tenemos ante nos. La falta de esa evidencia nos imposibilita descartar la apreciación de la prueba del DACO en el presente caso.

Un examen sosegado del expediente que nos ocupa mueve nuestro criterio a resolver que no se hacen presentes los criterios legales que legitiman nuestra intervención respecto a lo dispuesto por el organismo administrativo concernido. A nuestro juicio, la determinación aquí impugnada obedeció a un ejercicio razonable de apreciación de prueba por parte de la entidad recurrida, a la adecuada función de las facultades legales que le asisten, así como también, a una correcta interpretación y aplicación del derecho pertinente. En particular, la *Resolución* recurrida está basada en evidencia sustancial que no fue controvertida por la parte recurrente. En el caso de autos, la agencia dio credibilidad a la prueba presentada por la parte recurrida en la vista en su fondo, así como a la prueba documental que obra en el expediente administrativo. En virtud de ello, el DACO determinó que la recurrente no demostró que la parte recurrida haya incumplido con su deber de atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen de propiedad horizontal, especialmente lo relativo a los elementos comunes, conforme establece el Artículo 53 de la Ley de Condominios, *supra*.

En mérito de lo antes expuesto, sostenemos la determinación agencial recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya resultado de un ejercicio arbitrario atribuible al DACO. Por tanto, en ausencia de prueba al contrario, solo podemos sostener su determinación.

**IV**

Por los fundamentos que anteceden, confirmamos la *Resolución* administrativa recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones